ELIZABETH A. AND LEROY F. REDFIELD, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Redfield v. Commissioner
Docket No. 10652-92
United States Tax Court
T.C. Memo 1993-611; 1993 Tax Ct. Memo LEXIS 631; 66 T.C.M. (CCH) 1687; December 22, 1993, Filed *631 Leroy F. Redfield, pro se. For respondent: Randall L. Preheim. PETERSON
PETERSON
MEMORANDUM OPINION PETERSON, Special Trial Judge: This case was assigned pursuant to the provisions of section 7443A(b)(3) and Rules 180, 181, and 182. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure. Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: Additions to Tax
Sec.
Sec.
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(1)(A)
6653(a)(1)(B)
6662
1986
$ 8,947
--
$ 447
50% of the --
interest due on $ 1,560 1987
4,776
--
239
50% of the --
interest due on $ 1,162 1988
6,560
$ 328
--
-- --
1989
6,633
--
--
-- $ 239
After concessions by the parties the issues for decision for each of the years involved are: (1) Whether petitioners are entitled to a deduction for travel expenses incurred while away from home; (2) whether petitioners are entitled to a rental loss deduction; and (3) whether petitioners are liable for the additions *632 to tax for negligence. At the time of filing the petition herein, petitioners resided in Lusk, Wyoming. 1. Travel Expenses
Petitioner Leroy F. Redfield (petitioner) is a design engineer in the aircraft industry. Petitioner has maintained a personal residence in Lusk, Wyoming, since 1972. Commencing in 1978, petitioner has been employed by temporary contract employment agencies ("job shops"). Job shops provide engineering and technical support to companies with specialized personnel needs. The duration of a job is typically uncertain and often lasts only until a specific project is completed. During this period of time petitioner has been employed in Wichita, Seattle, Atlanta, Baltimore, Tampa, Birmingham, Dallas, and St. Louis. Most of the work in the aircraft industry is located in Atlanta, Baltimore, Dallas, Los Angeles, and Seattle. There were no job opportunities for a design engineer in Lusk, Wyoming, at anytime. Petitioners decided to maintain their principal residence in Lusk because it has been Mrs. Redfield's home for many years. Petitioners also own and manage rental property in Lusk, including a motel. Because petitioner and his wife maintained a permanent *633 residence in Lusk and had business commitments there, petitioner decided not to accept any employment that he felt would not last at least 1 year. For each of the years 1986 through 1989, petitioner claimed a deduction for travel expenses while away from Lusk on the basis that his employment at the various job sites was temporary rather than indefinite, as determined by respondent. For the period from October 1984 until October 1987, petitioner was employed in Dallas, Texas, as a design engineer and worked on the B-2 bomber while employed at LTV Aircraft Products and LTV Military Aircraft Division. For the period from October 1987 until June 1990, petitioner was employed in St. Louis, Missouri, as a design engineer and worked on aircraft design at McDonnell Douglas Aircraft Company. All of petitioner's employment during the years involved was for work on various military contracts for the Federal Government which were subject to cancellation. Petitioner was aware that if the contracts were cancelled his employment would be terminated. While petitioner was employed in Dallas, his wife lived with him approximately one-half of the time. While in St. Louis, petitioner lived with *634 his wife in an apartment during 1988 and part of 1989. During 1989 and until June 1990, petitioners lived in St. Louis in a house that they had purchased and restored. Petitioner contends that his employment was temporary, and, therefore, his living and transportation expenses are deductible under section 162(a)(2). Section 262 generally prohibits a deduction for personal expenses. However, section 162(a)(2) allows a deduction for ordinary and necessary expenses incurred for lodging, food, and travel while away from home in the pursuit of a trade or business. . Respondent does not contest that the travel expenses were incurred while petitioner was in the pursuit of a trade or business. Therefore, the issue we must decide is whether petitioner's travel expenses were incurred while away from home. A taxpayer's home for purposes of section 162(a)(2) is the vicinity of the taxpayer's principal place of employment and not where his or her personal residence is located. ; . *635 An exception to this rule exists when a taxpayer accepts employment away from home that is temporary rather than substantial, indefinite, or indeterminate in duration. . Temporary employment means the sort of employment in which termination within a short period of time could be logically expected and foreseen. , affg. ; . Employment may change from temporary to indefinite due to changed circumstances or simply by the passage of time. . In the instant case we find that petitioner's employment was indefinite for each of the years involved. Petitioner spent approximately 3 years working in the Dallas area and 3 years in the St. Louis area. During this period of time petitioner had no other place of employment. When petitioner accepted these two positions he was aware that his employment was indefinite in nature *636 since there was no reason to believe that his employment would last for only a short period of time. We believe that petitioner understood that the employment would last for an indefinite period of time based on the fact that his wife lived with him for most of the time that he was employed in both Dallas and St. Louis. There are no facts to show that petitioner was told or that he felt that his employment in either Dallas or St. Louis would only last for a short period of time. In fact, petitioner testified that he would not have accepted employment at either place if he felt that the work would be for only a short period of time, or less than 1 year. We recognize that petitioner was working under military contracts which could be cancelled at any time, however, this fact alone does not mean that his employment was temporary. Employment which merely lacks permanence is indefinite unless termination is foreseeable within a short period of time. ; ; see . *637 Although petitioner's employment may have lacked permanence, the substantial and actual duration of his employment for over 3 years at each location convinces us that his employment at each job site was indefinite. Accordingly, we find for respondent on this issue. 2. Rental Loss
Petitioners claimed rental loss deductions for the years at issue for property petitioner Elizabeth A. Redfield (Mrs. Redfield) purchased with her daughter and son-in-law (Lisa and David) under a Shared Equity Financing Agreement (Agreement). The property is located in Bozeman, Montana (Property), where Lisa and David were living. Mrs. Redfield decided to invest in the Property to help Lisa and David finance the purchase of a house to be used as their personal residence. Under the Agreement Mrs. Redfield, and Lisa and David agreed to purchase the Property for $ 54,000 and to obtain a mortgage loan of $ 49,000. Mrs. Redfield provided the down payment of $ 5,000 and acquired a 75-percent ownership interest in the Property, and Lisa and David obtained a mortgage loan for $ 49,000 by executing a note for this amount and obtained a 25-percent ownership interest in the Property. The record owners *638 of the Property are Lisa and David. The Agreement was never recorded by the parties. Under the terms of the Agreement Lisa and David agreed to rent the Property for $ 500 per month. Of this amount $ 375 was deemed to be paid as rent for Mrs. Redfield's 75-percent interest in the Property. The Agreement also provided that the mortgage payment, insurance costs, and all operating costs were to be paid from the rental payment. In the event the rental payments were not sufficient to pay all of these costs, Mrs. Redfield had no obligation to make a contribution for any deficit. Lisa and David were required to cover any shortage. Lisa and David were also required to pay for any alterations, additions, or improvements costing less than $ 200. For such items in excess of $ 200 it was necessary for Mrs. Redfield to agree to the expenditure and the division of payment. The Agreement also provided that any profit from the sale of the Property would be divided based on the above ratio after the mortgage was paid off. For each of the years 1986 through 1989, Mrs. Redfield reported 75 percent of the $ 500 monthly rental payment as rental income and claimed a deduction for 75 percent of *639 the expenses incurred for insurance, interest, maintenance and repairs, real estate taxes, utilities, and miscellaneous items even though Mrs. Redfield was not obligated to and did not make any payment in excess of her share of the rental income. For each of the years 1986 through 1989, Mrs. Redfield claimed rental expenses for the above items in the amounts of $ 7,146, $ 6,691.55, $ 8,428, and $ 6,826, respectively. Mrs. Redfield also claimed a deduction for 75 percent of the depreciation on the Property. The monthly rental payment of $ 500 was an arbitrary figure agreed to by the parties without regard to the fair rental value of the Property. Lisa and David entered into the Agreement for the sole purpose to acquire a house for their personal use. Mrs. Redfield made the investment for the sole purpose of helping Lisa and David obtain the Property. Respondent disallowed the losses primarily on the ground that the transaction was not entered into for profit under section 183. We agree with respondent that the losses are not deductible on the ground that the Agreement was not entered into with an actual and honest objective of making a profit on the transaction. . *640 It is clear the only reason Mrs. Redfield entered into the Agreement was to help her daughter obtain a house for herself and family. A review of the rental agreement shows that it was designed to allow Mrs. Redfield the opportunity to claim substantial rental losses. Although Mrs. Redfield contributed only $ 5,000 to the total purchase price of $ 54,000, or 9 percent, she received a 75-percent ownership interest. Lisa and David only received a 25-percent ownership interest after contributing $ 49,000 in the form of the mortgage. Petitioners have failed to show any economic purpose for such an arrangement, except to shift the tax benefits from Lisa and David to Mrs. Redfield. We cannot accept the Agreement as being at arm's length or with economic substance. Only in those transactions where it can be shown that an investment has economic substance, and was not motivated or shaped solely for tax benefits, will it be recognized for tax purposes. ; . In addition, we find that Mrs. Redfield did not incur the rental losses *641 as claimed. Even if we accept Mrs. Redfield's claim that the Agreement is bona fide, the rental losses are not deductible. Under the terms of the Agreement Mrs. Redfield was not liable for any expense in excess of her share of the rental income. As such, no losses were incurred and none are deductible. 3. Negligence
Respondent has determined that petitioners are liable for the additions to tax under sections 6653(a) and 6662 for negligence or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. . Petitioners have the burden of proof to show that the additions to tax should not be sustained by the Court. . Respondent has asserted the additions on the ground that petitioners were negligent with regard to the claimed rental loss deductions. Based on the record in this case petitioners have failed to meet their burden of proof. It is clear to the Court that the Agreement was nothing more *642 than a scheme to convert personal living expenses of David and Lisa into deductible rental losses for Mrs. Redfield. Accordingly, we agree with respondent and sustain the determination on this issue as set forth in the notice of deficiency. Because of concessions made by the parties, Decision will be entered under Rule 155.